Case 18-4158 Carlo Croce v. New York Times Company, et al. Oral Argument, 15 minutes per side. Mr. Gosnell for the appellant. Good morning, Your Honors. Mr. Brown. Gage Gosnell on behalf of the appellant, Dr. Carlo Croce. I'm joined by my partner, Mr. Jim Arnold. I'd like to reserve three minutes for replying. In early March 2017, the New York Times published a front page article with the following headline. Years of ethics charges, but star cancer researcher gets a pass. Dr. Carlo Croce was repeatedly cleared by Ohio State University, which reaped millions from his grants. Now he faces new whistleblower accusations. By this headline, the Times, in three sentences, summarized what the article was intended to convey and did convey. First, that Dr. Croce, for years, has committed research misconduct. Second, he has been repeatedly avoided accountability and cleared, not because he is innocent of the charges, but because, third, his employer, Ohio State, has turned a blind eye because it receives millions of dollars in grant funding from Dr. Croce's work. And we know that is exactly how many reasonable readers of the article understood it. But the headline is not isolated from the article, correct? That is absolutely true, Your Honor, and we are not suggesting that it should be. We are saying that the headline, of course, is part of the article, and it is a very important part of the article, because it summarizes what the New York Times itself is saying the reasonable reader should understand the article is about. A summary unaccompanied by the balance of the text gives you a stronger case, arguably, but isn't the rest of the text right there? The rest of the text is absolutely right there, and we are saying, read the headline, read the article, absolutely. Read it all in context, read it under the totality of the circumstances, and the job for this court, which the district court did not do, is to ask itself, would a reasonable reader, reading the entire article, is it capable that the reasonable reader would read the article and conclude that the New York Times is accusing Dr. Croce of research misconduct, and we say that absolutely the reasonable reader could do so. Is it a reasonable reader or the reasonable reader? I don't know that there is a distinction, Your Honor, between that. The test for purposes of defamation law, and this is clearly set forth in the restatement section 614, and it was espoused by the Ohio Supreme Court back in the Bigelow case, which I think was a 1941 case, citing the restatement, that the test is, could a reasonable person interpret the article in a defamatory sense? And I think the test is, a reasonable reader. Does that mean every reasonable reader has to read it defamatory? No. But if you had ten so-called reasonable readers and one read it that way, would that be enough? It would be enough to survive a motion to dismiss. And of course, the reasonable reader is an objective test, right? It is absolutely an objective test. You've cited Bigelow, a 1941 case, and it's citing the restatement. Is the Ohio Supreme Court currently on record of following the restatement in that particular provision? Your Honor, I would say there's nothing from the Ohio Supreme Court that suggests that it no longer follows the restatement in regard to that provision, and it has repeatedly, and we've cited several cases in our briefs, where the Ohio Supreme Court has looked to the restatement generally for what defamation law is. In fact, Judge Cook, in your opinion in McKim, you cited the restatement for the reasonable person test, which is, the person is charged, the defendant is charged with what the reasonable reader would interpret. In McKim, was the restatement the only authority that was used? I think it was part and parcel of other authority, too, right? Certainly, Your Honor, you cited the restatement, you cited other Ohio Supreme Court case law. I don't think there's any dispute that the reasonable reader test is what is applicable here. So you do agree that the McKim case is a much more recent case that would be relevant here? The McKim case is absolutely a more recent case. I believe it is a 2000 case. Right. It is, let us keep in mind, it is not a defamation case. While the opinion certainly cites and refers to defamation law for principles including the reasonable reader test, it is a elections case. May I go back for a moment? You read us the intro. Is that, are the statements there the ones, the very, the one and only statements of the grouping, what you target as defamatory? Absolutely not, Your Honor. This is a straw man argument. There's a lot of absolutes here. What do you target in addition to what you began your argument with? The Your Honor, we are asking the panel to read the entire article. All right. All of the words there, all of the statements, it's content. Altogether in context. Altogether in context. One of the claims is the article as a whole conveys to the reasonable reader that Dr. Croci committed research misconduct. And the headline absolutely says that. In fact, the Times does not even suggest that the headline itself can be interpreted any other way. The words get a pass only mean that he, Dr. Croci, is guilty. Innocent people don't get a pass. Doesn't get a pass, couldn't get a pass suggest to the reasonable reader some slam on Ohio State rather than your client? It is a slam on both of them. They're not mutually exclusive. It is certainly a slam on Ohio State. They're saying that Ohio State has turned a blind eye because of the money he gets. That may or may not be defamatory to Ohio State but it's also defamatory to Dr. Croci because it tells the world that he's guilty and he's gotten a pass because Ohio State cares only about the money. The article, and this I think is important for the panel to understand. The cases that the Times cite about you can't just look at the headline. We don't disagree with any of them. The cases stand for the proposition that even if a headline alone could be reasonably construed as defamatory, if the balance of the article negates the defamatory sting of the headline, then the article is not deemed to be defamatory. Are there any claims then for individual statements in any article? Since you have to read the whole article anyway, do you have claims based on individual statements in an article? Yes, Your Honor. So there is the statements that are contained in the article that are the allegations against Dr. Croci. So the allegations are he has committed research misconduct. And then the article says that those allegations are confirmed by... That's the allegation. We were looking at defamatory statements. I think that was, I don't know, was that your question, Judge? Was there a particular statement? Yes, there is. One is the headline, of course. And the other, there are two specific times. What line? The allegation of research misconduct? That in itself is defamatory? Yes, there are claims against Dr. Croci of committing data falsification and plagiarism. Okay, but we're looking for the words or the sentences. Is there some targeting or should we go back to your position earlier articulated that it is the context and every word contained in there? Yes. So if we look at the very first page of the article, and it is the first page of the article, and it is the, I believe, the third paragraph of the body of the article. Over the last several years, Dr. Croci has been fending off a tide of allegations of data falsification and other scientific misconduct. It then goes on to say that... Is that an untrue statement? You know, it has to be untrue. It is not untrue that he has... Fended off... There are allegations. The point that we are making here is that the article doesn't simply say people are making allegations. It's not a news story, Your Honor. It is an investigative piece in which it asks the reader to make a conclusion. And it drives the conclusion that these allegations are true. It adopts the allegations as true, and the allegations are true because... I think Judge Moore is about to ask a question. It says that he denies these allegations. And it also gives examples of people such as this Sanders fellow as a particular critic. But I didn't realize that that paragraph that you just quoted over the last several years was a statement that you are claiming is defamatory. I thought you had 15 or so statements, and that was not one of them. The complaint sets forth 15 statements that are alleged to be defamatory. The article as a whole includes all of those defamatory statements. Some of them are put in the words of other people. But the point that we're trying to make is that the Times, by its construction of the article and how it has drafted the article, has told the reasonable reader not just that there are people making allegations, but the allegations are true. Where does it say the allegations are true? Okay, it says the allegations are true because, one, OSU has turned a blind eye and given him a pass because of the money he gets. That says that the allegations are true. It says it's true, and this is very important, because two, at least two, non-biased arbiters, not Ohio State, have said that the allegations are true. Meaning Sanders? Not Sanders. So the first one is the section of the article that is what I was just getting to, which is in the first page and the second page of the article, that journal editors have corrected, retracted Dr. Croce's papers because of the allegations of Dr. Sanders. And the allegations of Dr. Sanders are, of course, data falsification and plagiarism. But is that true? It is not true. The complaint absolutely says that it's not true. Dr. Croce has never had a paper corrected, retracted, or a notice provided. The news article is reporting allegations from somebody else, which it's allowed to do, right? I mean, you can put that in a news article, can't you? You can put allegations in a news article, but when you take the allegations and you say, these people made allegations. These allegations, according to the complaint, are absolutely false and defamatory. And no one disputes that it's defamatory if it's false. But it says that your client denies them. I mean, it's reporting, they say these allegations, sometimes allegations are true, sometimes they're false, but they're newsworthy that they're allegations made. And the other side says, well, no, they're not true. I mean, the notion that just because they have sprinkled the article with this notion that Dr. Croce has denied it, I say does not turn around the defamatory sting. If I could go back to it, they say third-party arbiters have confirmed that the allegations are true. Journal articles have corrected his papers because of data falsification and plagiarism. That is false, and it says to the reasonable reader the allegations are true. Then later on in the article it says that the Office of Research and Investigation of the federal government has looked at many allegations against Dr. Croce. Is that true? They have. But the false allegation is that the federal government has said that they cobbled them down to the two most actionable, implying to the reasonable reader that all of them were legitimate and had valid concerns, but because of two reasons. One, because they recognized how difficult it would be, because he was a rainmaker for OSU, that OSU would actually find him a violation. Was that true? That they would do that. You're interrupting me. I'm sorry. I'm very apologetic. You're an experienced litigator. You know you're supposed to let the judge out. I am sorry. Was it true that that person who said he was focusing on two matters said that he was focusing on two matters? He said he, I think, cobbled it down to the two most actionable. And would that, is there some falsity to that, that they are the two most actionable? Or do we even know? We don't know, right? Because we don't know what the pool is. I'm sorry. Yes, the most actionable, we submit to the reasonable reader, suggests that the others also had merit. It's just that these two were the ones that had the most merit and the ones that Mr. Dahlberg thought had the best chance of being adequately reviewed by Ohio State. That, in context, is what that section of the article states. It reports his opinion. I'm sorry? It reports his opinion that these are the two most actionable. That doesn't say he's the, I mean, it suggests, all of this is suggestive of something nefarious, but can't the Times report his opinion as an investigative report? Yes, the Times can report someone's opinion, and if they don't portray that opinion as being adopted as its own opinion, they may have an argument. That's your point. It has adopted the opinion by the context. That's correct. Absolutely, Your Honor. Thank you, Your Honor. Good morning, Your Honors. I'd like to primarily address questions that each of you have raised of plaintiff's counsel, but I think it's important at the outset to spend two sentences on the defamatory statements. You must be aware from the papers that the district court first dismissed the complaint in its entirety as to all of the defamatory statements that are still at issue on appeal on the basis that they don't, none of them taken together or individually, communicate to the reasonable reader. I'll come back to the reasonable reader in a moment. The defamatory meaning alleged by Dr. Crouchate, that is the contention that the New York Times affirmatively asserts in the publication that he is in fact guilty of significant scientific misconduct, and the district court correctly held in our view that because the article presents a balanced report of this controversy, the reasonable reader would not interpret it in the way suggested by Dr. Crouchate. But then the district court noted two alternative, at least two alternative bases for its decision, at least with respect to the part of the case that is still at issue on appeal. First, that even if you concluded that a reasonable person, I'm using the word a for a reason there, if a reasonable person could interpret the article, its headlines, in the way that Dr. Crouchate has alleged, it nevertheless is non-actionable as a matter of law pursuant to Ohio's innocent construction rule because a reasonable person could interpret the article in a non-defamatory sense. How does that work mechanically with a headline? We look at the headline, it's pretty problematic, right? He's right. You talk about getting a free pass, you're talking about you should have gotten punished and you didn't. So we look at the entire article and say, oh, okay, but if you read it in context, it's okay. What is the innocent construction rule? How does it apply? It applies to the whole article and how that context affects the headline? Absolutely, Your Honor. With respect to each of the statements, including the headline that is individually alleged to be actionable, it still has to be read in the context of the entire publication to determine what meaning the individual statement reasonably conveys. That's just as true of the headline as those specific statements in the article that are still at issue independently. In that regard, Your Honors, the appendix to our brief on appeal contains a copy of the article as published and in the margins are statement numbers, which the parties and the district court use to refer to those individual statements. We show the numbers, the statement numbers, in red to help you identify the specific statements that are still at issue on this appeal given the claims that the plaintiff has abandoned. There was one allegation, I think, that some of this had been tweeted out or that there had been a social media post regarding this headline. What is the context of an individual tweet? Is it the entire article that you're linking to or is it just the tweet itself? Your Honor, there is case law and certainly the general rule of law establishes that where you've provided a link to the article, the reasonable reader is presumed to both see the tweet and read the article. What if it's behind a paywall? Your Honor, I don't believe in this instance that would have been the case here. The record doesn't tell us that for sure, but in the absence of an allegation that the reasonable reader of the tweet would not have been able to access the article, I think the court needs to presume that it tweets before us on this appeal? Your Honor, the headline, I'll use that phrase, contained in the tweet is what the parties in the district court referred to, I believe, as Statement 2. Let me just verify that so I'm not misdirecting you. Statement 2, interesting though, I think Statement 2 doesn't have the no pass, doesn't have the pass language in it. Correct, Your Honor. Is that right? That's correct. So when the Times tweeted it out, it didn't say he got a pass. Right. That's exactly right, and indeed the plaintiff hasn't really, in the context of this appeal, made any particular argument about Statement 2 in that regard, although he contends that it remains at issue. If I could get to the heart of a concern that I have, if the test of whether it's defamatory is what the reasonable reader would think on looking at the entirety of the article, is that in conflict as an intellectual matter with the Innocent Construction Rule which says that if a reasonable reading is non-defamatory then the newspaper here gets to avoid any liability? I don't think it's in conflict, Your Honor, because it is not as a logical matter inconceivable that a single statement or publication is susceptible of more than one reasonable meaning. And indeed the logical progression that the district court took I think is exactly right in that regard. The first question is whether the challenged publication is susceptible to a reasonable person of a defamatory meaning in the first instance, and if the answer is no, then we end right there. The plaintiff can't make out the first element of his cause of action. But in this circumstance and in Ohio, which is one of the jurisdictions that uses this approach, the innocent construction approach to dealing with this issue, you then move to the second question. Well, assuming for present purposes that Dr. Croce's alleged defamatory meaning could reasonably be conveyed, is it true that a reasonable reader could take a second and different innocent, that is non-defamatory meaning, from the publication? And under the Innocent Construction Rule, which is clearly part of Ohio law, if that is the case, then the court is required as a matter of law to adopt the innocent construction and hold the publication non-defamatory. So there will never be a jury question on this issue? On this issue? In Ohio, whether something's defamatory will never go to a jury, right? Your Honor, the jury will have the responsibility to determine whether persons receiving the publication in fact received the publication and construed it in a way that harmed the plaintiff's reputation. But as the U.S. Supreme Court and the Ohio Supreme Court have made plain, there is a gatekeeping question for you as judges and for the district court in its position to determine, using the reasonable person standard, whether the publication is capable of that in the first instance. The question is whether it's a reasonable person could construe it in that defamatory sense. And the Supreme Court has given us important guidance, which goes to one of the questions you asked, Your Honor, about whether you made the point that this is an objective test. And it is indeed. In the case New York Times v. Sullivan, involving this same defendant in 1964, that case is primarily known for establishment of the actual malice fault standard, which is not relevant in this posture of this case. But there was a second alternative holding with respect to defamatory meaning. In that case, six good people of the town of Montgomery, Alabama, had testified at trial, subject to cross-examination about whether they were reasonable people, that they had understood the challenged publication and advertisement to be defamatory of Commissioner L.B. Sullivan in this particular way. And they testified that they so understood it. Although the Alabama jury entered a verdict on that basis, and both levels of the appellate courts in Alabama affirmed that verdict on the basis in part of that testimony, the United States Supreme Court reversed in its alternative holding on defamatory meaning on the basis that it was constitutionally prohibited to whether the statement was reasonably capable of being understood as about Mr. Sullivan in that way. Rather, the court said you must look at the face of the publication to determine whether it reasonably conveys it. But if under the innocent construction rule, and maybe this, I'm just repeating Judge Moore's question, and I just didn't understand, but what, is it, as long as we can conceive of some innocent construction, do we have to go with that as a matter of law? As long as you can conceive of one that is reasonable, Your Honor. That's correct. Any innocent, we just sit around and decide, oh yeah, you could, in theory, think of this innocently, that's reasonable as a matter of law, case is over. If, the case is made clear that it is not a, the court's task is not to identify which meaning is more reasonable, but if there are two reasonable interpretations, one of which is non-defamatory, then the court is obliged to accept that as the reasonable meaning of the publication. And what is your best case, we're dealing with Ohio law, what is the best case to say that that is the appropriate standard here? Actually, you don't have to look much further than Judge Cook's opinion in the McKim case, which clearly applied the rule of innocent construction in that case. On the facts of that case, the Ohio Supreme Court, in the opinion authored by Judge Cook, held that there was only one meaning to the cartoon of a hand passing money under the table. And therefore, the innocent construction rule did not apply to bar that claim. But it is a clear articulation of the standard. And there is no such clear statement by the time, indeed, we submit there is no statement clear or unclear by the times, in the article at issue here, that Dr. Croce, in fact, is guilty of the allegations leveled against him. Has the Ohio Supreme Court ever applied the innocent construction rule as basically the difference maker in a defamation case? As the difference maker in the state Supreme Court. In the Weber and the Yeager cases, Your Honor, the court certainly applied the rule, although there were multiple grounds for the decisions in those cases. I realize this court is not bound by a district court opinion. But to answer your question, Judge, the case I refer the court to in that regard is the net satellite information case, which the district court here relied on and cited. The district court citation to it can be found at page 1016 in the record on appeal. In that case, a news report about two police officers accused of having sex while on duty, with respect to one of the two officers, said that he had had sex while on duty. And in adjudicating the innocent construction rule in that case, the court noted that if the report had instead said that he was alleged to have had sex while on duty, the court would find that that could be innocently construed as a neutral report of allegations and the claim would be barred. But because the news report omitted the word alleged or allegation or any variation of it, the court held it could only be construed in one way, a defamatory way. That set of facts, the complete absence of an indication that the report was talking about allegations, is the precise opposite of the factual situation here involving the article. Which as your honors have noted, repeatedly throughout the article, reasserts Dr. Croce's own denials of and explanations for the problems that in fact occurred in his articles. It reports what supporters of Dr. Croce say and indeed the thesis of the article. I think a reasonable reader, having read the article, would clearly see that the thesis is that there is a problem with the system for evaluating claims of scientific misconduct. But it's using Dr. Croce as the prime example. Absolutely. But that goes to a point, one of your honors, I think it was Judge Cook raised earlier, and that's the meaning, the reasonable meaning of the phrase get a pass, whether in this case considered in isolation or as it should be with the article as a whole, the plaintiff leaves a logical step out in the argument. To say that an arbitrator is conflicted is not the same thing as saying that the party before the arbitrator is guilty. And fairly read, I believe that all that we can say of the New York Times article is that it makes the case that the arbiters, that is the universities that are responsible for adjudicating these matters, have inherent conflicts and it expressly uses Dr. Croce and Ohio State University as what it refers to as a case study of this systemic problem without ever, as the news organization in the Young v. Gannett case unfortunately did, without ever affirmatively suggesting and without affirmatively stating that the allegations against Dr. Croce were correct. One specific thing that's briefed is the Statement 14, which says that there have been, journals have been posting notices of problems with Dr. Croce's papers at a quickening pace from just a handful of notices before 2013 known as corrections, retractions, and editor's The number has ballooned to at least 20 with at least three more on the way. And as I understand it, at least based on the brief, your opponent is challenging that particular statement. How do you, are you relying on substantial truth as the basis to say this is not a defamatory statement? I see that my time is up, I assume I may answer, Your Honor. First, we believe that that statement in the context of the article as a whole is non-defamatory and at a minimum subject to an instant construction. But you're absolutely right that the district court as an alternative basis for dismissing the claim based on Statement 14 held that it was substantially true, and it is. In the district court, Dr. Croce had challenged both the number of corrections and the reason for them. On appeal, in his reply at 19, Dr. Croce abandons his claim insofar as based on the precise number of those editorial notices or corrections, and instead proceeds only on the basis of what the article allegedly says about the causality. But this really comes down to two simple questions. Is saying that a scientific paper was subject to editorial notice because of a, quote, honest error, which is what Dr. Croce admits to, is that materially different to a reasonable reader than saying it was subject to notice, that is, the scientific paper was subject to notice because it had, quote, false figures in it? To say that something is false is not the same thing as saying that it was intentionally falsified, and the Times Nowhere says that Dr. Croce intentionally falsified material in his articles. Well, we'll be back to context then. Absolutely. You would have to concede that contextually the implication is not favorable to Dr. Croce. In terms of his research. I don't think that's correct, Your Honor. I think that in all fairness, the article never takes a position, and a reasonable person would not infer from the article that the Times was, in fact, saying that Dr. Croce had done it. It reports the views of certain people that Dr. Croce personally was involved in the errors in these figures, but the Times does not assert that, and the same is true with respect to the second part of the paragraph that you just read, Judge Moore, about text overlap. The question that you all have to answer is whether saying that a scientific paper was subject to an editorial notice because of, quote, text overlap, the phrase that Dr. Croce prefers, would have a materially different impact on the reaction of a reasonable reader than the statement in the Times article that it was subject to notice because of, quote, plagiarism, unquote. To say that something was plagiarized is not the same thing as saying that it was intentionally plagiarized, and the Times never says that Dr. Croce did either. So you think plagiarism doesn't involve intent? Unless one says that it was intentional plagiarism, because the inadvertent act of copying a block of text from one publication into another without permission. That is plagiarism? Yes, absolutely. Where do we go to define plagiarism? Well, I think the court can take judicial notice of the common definitions available through dictionaries and Google. I don't know. I think most anybody would view plagiarism as a pejorative term. That is certainly true, Your Honor, but that is not the same as saying it's actionable in defamation. Okay. And your red light is on as well. Thank you. Thank you. Thank you, Your Honors. I would like to go back to the innocent construction rule and respond, Judge Moore, to your question, I believe, is there an inherent conflict between the reasonable construction rule and the innocent construction rule? And the answer to that is absolutely. The innocent construction rule effectively eviscerates the reasonable construction rule. But if the Ohio Supreme Court wants to adopt any particular rule, we as a federal court sitting in diversity have to follow what the Ohio Supreme Court has said, right? Yeah. And I would submit that if you read the two cases in which the innocent construction rule has been even addressed by the Ohio Supreme Court, neither one of them has adopted it as a rule of law for purposes of Ohio law. And to answer Judge Albandian's question, in neither of those cases was it a decision maker. But has any Ohio State Court, Court of Appeals, Common Pleas, anywhere said, I'm not going to follow the innocent construction rule? Right. I will candidly admit that there is no case that says that. I will refer, though, the court to the Dr. Gupta case, which we cite in our brief, where the court at least questions whether the innocent construction rule applies in a non-actual malice case, such as what we have here, noting that the Supreme Court only used it in two actual malice cases, the Yeager case and the McKim case. Is it a rule that's, I'm not sure whether you know this or not, is it a rule that's widely adopted around the country? No. In fact, our briefs make it clear it is widely rejected around the country. In fact, the only jurisdictions that have adopted it is Illinois, for sure, and arguably Ohio, right? We're fretting about that. The amicus brief suggests that maybe Missouri has adopted it, but if you even read that case, it's not even clear. No, it is a clear anomaly and outside of the mainstream and contrary to the restatement. Has it been explicitly rejected in other places? I don't know for sure about that, Your Honor. It is certainly contrary to what everybody else holds, which is the reasonable construction rule applies. And if we have, I think counsel for the time conceded, that if we have a situation in which a statement or an article such as this perhaps, perhaps, could be reasonably construed in defamatory sense and in an innocent sense, that is the very point of what a jury is for. As long as it's reasonably capable of a defamatory meaning, the jury then is asked, was it understood by the people in a defamatory meaning? And based upon all the facts and circumstances, what are the appropriate damages for that? The notion that this article, because it is, quote, a case study about the difficulty of judging research misconduct, does not eliminate the defamatory nature of the article at all, because Dr. Croci is the very poster child for the point. The question is, is it reasonably capable of an innocent construction as to Dr. Croci? We submit that it cannot be, and even if it could be, this court should either reject the innocent construction rule or certify a question to the Supreme Court so that they can finally answer for purposes of this court and for the Ohio courts the proper standard under Ohio law. We request that the court reverse and remand. Thank you. Thank you both for your argument, and the case will be submitted and the court will take a brief recess.